## In re Lot in Oil City

*Frampton & Courtney*, for petitioner.
*McAlevy & Welsh*, for school district.

MCCRACKEN, P. J., February 25, 1954.—On November 17, 1953, the School District of Oil City, this county and State, adopted the following resolution:

"*Whereas* The School District of Oil City has for many years maintained a public school building known as the Grant Street School Building located on the block in the City of Oil City, Pennsylvania, bounded on the North by East Third Street; on the East by Pennsylvania Avenue; on the South by East Fourth Street and on the West by Grant Street, and

"*Whereas* on account of the age and physical condition of said building, the Board of School Directors of The School District of Oil City has decided to raze said building and replace it with a new and modern school building, and

"*Whereas* in order to have sufficient ground on which to erect said building, it has become necessary for the School District to acquire certain lands fronting on East Third Street and lying east of the present school property, and

"*Whereas* a portion of the land which it must acquire in order to erect said new building is owned by one Edith E. Miller, which premises are described as follows:

" '*Beginning* at a point on the southernline of East Third Street in said City, where the same is intersected by the eastern line of Pennsylvania Avenue; thence eastward along the southern line of East Third Street, 40 feet to the northwest corner of Lot No. 7238; thence southward along the line dividing Lots Nos. 7237 and 7238, 121 feet to the northern line of Fourth Alley; thence westward along said northern line, 40 feet to the eastern line of Pennsylvania Avenue; thence northward along said eastern line, 121 feet.'

"*Being* Lot No. 45 as marked and numbered on the J. L. Carnaghan Plan of Lots or No. 7237 as marked and numbered on the City Map of Oil City, and

"*Whereas* said Board of School Directors has endeavored to purchase said lot of land from the said Edith E. Miller, but has been unable to agree with her on the price for the same, although numerous attempts have been made to do so.

"*Now, be it resolved and it is hereby resolved* that The School District of Oil City hereby appropriates and condemns said Lot No. 7237 as above described under the provisions of Section 721 of the Public School Code of 1949, and the said Board of School Directors shall enter upon, take possession of and occupy said lot or parcel of land for school purposes, particularly for the purpose of erecting thereon a new school building.

"*And further be it resolved* that the President of this Board of School Directors is directed and authorized to enter upon said lands with such members of the Board and others as he may desire, take possession thereof and occupy the land above described and designate and mark the boundary lines thereof."

On November 30, 1953, pursuant to a petition filed by the School District of Oil City viewers were appointed "to ascertain and award just compensation to all persons for their property so condemned and appropriated in accordance with the act of assembly in such cases made and provided."

In the proceedings at the above term and number, the property of Edith E. Miller was taken for the purpose of erecting and maintaining a public school.

Edith E. Miller has presented a petition praying that the entire proceeding be quashed for the reason that the court is without jurisdiction as no bond was filed by the school district and no provision made for compensating Edith E. Miller for the land taken or the damages suffered by her by reason of said taking. To this petition the School District of Oil City has filed an answer.

In support of her contention Edith E. Miller has called our attention to article I, sec. 10, of the Constitution of the Commonwealth of Pennsylvania reading as follows:

". . . nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured."

In further support of her contention Edith E. Miller cites Gilmore v. Pittsburgh, etc., R. R. Co., 104 Pa. 275. In this decision the Supreme Court does not declare that failure to provide the means of compensation for damages sustained or land taken when a public or municipal corporation exercises the power of eminent domain invalidates the proceeding. It indicates that in such a case the remedy is either by action of trespass to recover damages, or if permanent possession is taken ejectment is the proper remedy.

The jurisdiction of the court is the issue raised in the instant case and this question was neither involved nor discussed in the last cited opinion.

The only requirement of the section of the Constitution heretofore quoted is that compensation for land taken or damages sustained must be made and some provision for their payment provided. The legislature has adopted several methods to secure this purpose. In some cases a bond is required, and in others a method of taxation is provided whereby the land owner is compensated for the land taken or the damages suffered.

With respect to property condemned by a school district for the purpose of erecting and maintaining public schools the Act of March 10, 1949, P. L. 30 in section 721 provides as follows:

"Whenever the board of school directors of any district cannot agree on the terms of its purchase with the owner or owners of any real estate that the board has selected for school purposes, such board of school

directors, after having decided upon the amount and location thereof, may enter upon, take possession of, and occupy such land as it may have selected for school purposes, whether vacant or occupied, and designate and mark the boundary lines thereof, and thereafter may use the same for school purposes according to the provisions of this act."

This is a reënactment in identical language of section 605 of the School Code of 1911. There is no requirement for the filing of a bond or the tendering of any other security, and it was manifestly the intent of the legislature that no such bond should be filed where land is condemned for school purposes.

In our opinion the constitutional provision hereinbefore recited was complied with by section 722 of the School Code, reading as follows:

"The school funds which may be raised by taxation in any school district shall be pledged, and hereby are made security, to the owner or owner of any property taken for school purposes, for all damages they may sustain on account of taking of such property by the district for school purposes."

This is an identical reënactment of section 606 of the School Code of 1911. This provision in our opinion amply protects a land owner.

The same question involved here was considered by the court in Hardy v. Marple-Newton Joint High School District, 31 Del. Co. 112, 118, where Judge Ervin states the law as follows:

"By Section 606 school funds which may be raised by taxation are pledged as security to the owner of any property taken for school purposes for any damages sustained. In the present situation it is the opinion of the court that the two boards sitting together jointly as supervisors of the affairs of the joint school district, may pass a resolution condemning real estate for joint school purposes and that the effect of this

is to pledge the school funds of each separate district which may be raised by taxation as security, in accordance with Section 606 of the School Code. In other words, the two boards sitting together jointly in control of the affairs of the joint district may do anything that a separate school district may do, except where otherwise specifically provided."

In Jury et al. v. Wiest et al., 326 Pa. 554, a question somewhat akin to the one presented here was under consideration by the Supreme Court and in connection therewith we read from the tenth paragraph of the syllabi:

"An owner of land which has been condemned by a school district is entitled to compensation under section 606 of the School Code, which provides that the school funds which may be raised by taxation shall be pledged and are made security for the damage to the property owner."

In the last cited case a bill in equity was presented to enjoin the purchase by the School District of Shamokin Borough of certain properties from defendants. The basis of plaintiffs' complaint was that no provision for payment of the land was made by the school district and that the indebtedness of the school district exceeded the constitutional limitation of the borrowing capacity of the district. In this case no bond was tendered although the agreed purchase price of the property was placed in escrow until certain conditions to be performed by the school district and by the owner of the property were complied with. Chief Justice Kephart, in speaking for the Supreme Court on page 559, states the following:

"Section 606 of the School Code provides that where a school district acquires property by condemnation 'the school funds which may be raised by taxation shall be pledged and hereby are made security' for damages caused to the owners of the property as a

result of the taking. The appellees were entitled to compensation thereunder. This section causes the proceeds of the unused portion of the available millage to become an asset in calculating the extent to which the indebtedness of a school district may be increased, and it also makes that fund security for the price to be paid."

In Lewisburgh School District v. Harrison et al. 290 Pa. 258, the various steps to be taken by a school district in condemning land for public school purposes are set out in detail and they are enumerated by Mr. Justice Frazer, speaking for the Supreme Court, in this manner:

"It is plain therefore, that the order of procedure for condemnation proceedings as set forth in section 605 of the School Law follows this line: (1) the selection of the site; (2) disagreement as to price; (3) decision on the amount of land and location; (4) entry, taking possession and occupancy, being one and the same act, concurrently performed by going upon the land; (5) designating and marking the boundary lines; after which steps the school district 'may use the same for school purposes.' "

From the testimony presented at the hearing in this matter the identical steps prescribed above were taken by the school district and no complaint thereto has been made by Edith E. Miller.

We are of the opinion and so hold that under the statute heretofore cited Edith E. Miller is amply protected in her rights to compensation for the land condemned and taken by the School District of Oil City. We therefore conclude that the court has jurisdiction of this matter.

And now, February 25, 1954, the rule heretofore issued upon the petition of Edith E. Miller to quash the proceedings at the above term and number is discharged and her petition is dismissed at her cost.